UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| CRA HOLDINGS US, INC. AND SUBSIDIARIES,<br><br>                            Plaintiffs,<br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>                            Defendant. | **DECISION**<br>and<br>**ORDER**<br><br>15-CV-239W(F) |

_____

APPEARANCES:       ZERBE FINGERET FRANK & JADAV
                              Attorneys for Plaintiffs
                              JOHN H. DIES,
                              JEFFERSON H. READ,
                              ROBERT G. WONISH, II, of Counsel
                              3009 Post Oak Boulevard, Suite 1700
                              Houston, Texas   77056

                              RICHARD E. ZUCKERMAN
                              Principal Deputy Assistant Attorney General
                              Tax Division, U.S. Department of Justice
                              Attorney for Defendant
                              JAMES M. STRANDJORD, of Counsel
                              PO Box 55
                              Ben Franklin Station
                              Washington, DC 20044


In this R&D tax refund case based on Plaintiffs' claim that Plaintiffs, a national environmental remediation company, are entitled to recover $618,143 in taxes for Plaintiffs' tax years 2002 ($245,077) and 2003 ($413,066). Plaintiffs' claim is predicted on various amounts of R&D tax credits to which Plaintiffs allege Plaintiffs are entitled pursuant to 28 U. S. C. § 41 *et seq.* ("§ 41 ___") arising from Plaintiffs' Qualified Research Expenses as defined in § 41 (b)(1) ("QREs") incurred in connection with 159 environmental remediation projects undertaken by Plaintiffs during the tax years at issue. Initially, Plaintiffs sought refunds based on 6,100 such projects, however,

Plaintiffs subsequently reduced to 159 the number of projects upon which the refund is calculated resulting from Plaintiffs' assessment of the litigation costs expected in asserting a refund based on the 6,100 projects as originally alleged by Plaintiffs in the Complaint including numerous projects for which Plaintiffs sought small refunds.  At the parties' request, discovery has been extended to June 28, 2018, with dispositive motions to be filed November 28, 2018.  *See* Third Amended Scheduling Order ¶¶ 2, 4 (Dkt. 92).  Upon Plaintiffs' motion, the court determined that in this case discovery and trial should be based on a random sample of 12 of the 159 projects.  *See CRA Holdings US, Inc. and Subsidiaries v. United States of America*, 2017 WL 3404758, at *1 (W.D.N.Y Aug. 8, 2017) (Dkt. 69); *CRA Holdings US, Inc. and Subsidiaries v. United States of America*, 2017 WL 370811, at **5-6 (W.D.N.Y. Jan. 26, 2017).  In accordance with the court's directions, *see CRA Holdings US, Inc. and Subsidiaries*, 2017 WL 3404758, at *4, the parties thereafter selected 12 projects which are the basis of on-going merit-based discovery, summary judgment practice and, if necessary, trial.  *See* Dkt. 72-1 ¶ 4.

In response to Defendant's First Request for Production and Third Set of Interrogatories dated September 15, 2017, Dkt. 72-3, directed to the 12 projects included in the sample, Defendant moves to compel, as relevant, Plaintiffs' answers to Interrogatories No. 2 relating to experiments conducted by Plaintiffs, No. 3 (requesting Plaintiffs identify all of Plaintiffs' business components that are relevant to 26 C.F.R. § 1.41-4(b)(2) ("shrink-back rule")), and Nos. 4-5 (relating to Plaintiffs' computation of qualified research expenses ("QREs") for the base period 1984 – 1988) ("Defendant's

September 2017 Discovery Requests").[1] The shrink-back rule permits a taxpayer to comply with the requirement of § 41(d)(1) that the R&D credit arise from QREs relating to the taxpayer's business components (*i.e.*, Plaintiffs' "product, process, computer software, technique, formula, or inventions to be held for sale, lease or license") if the taxpayer's "overall business component" fails to meet § 41(d)(1)'s definition of a business component by establishing that "the most significant subset of elements of" such process, etc. satisfies the requirement of § 41(d)(1). *See* 26 C.F.R. § 1.42-4(b)(2). Plaintiffs responded to Defendant's September 2017 Discovery Requests by serving on September 29, 2017, Plaintiffs' Amended Disclosures ("Plaintiffs' Amended Disclosures") (Dkt. 72-4) and, on October 16, 2017, Plaintiffs' responses to Defendant's September 2017 Discovery Requests ("Plaintiffs' Responses") (Dkt. 72-5).

In Plaintiffs' Amended Disclosures Plaintiffs identified 15 former CRA employees with knowledge of the facts supporting Plaintiffs' refund requests,[2] described five categories of documents related, *inter alia*, to Plaintiffs' Base Period calculation as a required component for Plaintiffs' calculation of damages, *i.e.*, Defendant's denials of Plaintiffs' refund requests, which response included a copy of a page from Plaintiffs' IRS Form 6765 which requires taxpayers seeking R&D tax credit-based refunds to

---

[1] Under § 41, the R&D tax credit is an amount equal to 20% of any excess of the taxpayer's QREs for a taxable, *i.e.*, credit year, over a base amount, 28 U.S.C. § 41(a)(1), which amount is defined as the product of the fixed-base percentage and the taxpayer's average gross receipts for the four years preceding the credit year, § 41(c)(1), but not less than 50% of the QREs for the credit year. § 41(c)(2). The fixed-base percentage is generally the lesser of 16% of the percentage of the aggregate QREs of the taxpayer for the base period years, or the aggregate gross receipts of the taxpayer for those years. *See* § 41(c)(3)(A) and (C). *See Suder v. Comm'r. of Internal Revenue*, 2014 WL 4920724, at **12-13 (U.S. Tax Ct. 2014). The formula for computation of the R&D tax credit to demonstrate the importance of the Fixed-Base Percentage in calculating Plaintiffs' damages, *i.e.*, alleged refund based on Plaintiffs' demonstrated R&D tax credit pursuant to § 41 is more fully stated in the Appendix to this Decision and Order. As the formula shows, as a taxpayer's Fixed-Base Percentage declines, the requested R&D tax credit and resultant refund increases.
[2] It appears that Plaintiffs were acquired by a company named GHD. *See* Dkt. 72-4 at 7 (stating that the 15 listed former CRA employees are now GHD employees).

summarize basic information relevant to a calculation of the refund, *see* Dkt. 72-4, including Plaintiffs' Fixed-Base Percentage stated as 3.34% for each tax year at issue. Dkt. 72-4 at 9. Plaintiffs also represented in response to Defendant's Discovery Requests that Plaintiffs would provide copies of responsive documents within 45 days. Dkt. 72-5.

In answer to Defendant's Interrogatory No. 1 requesting Plaintiffs describe the business component for each of the 12 projects, a requirement for a § 41 R&D tax credit, Plaintiffs' provided a one-paragraph description of each project in which Plaintiffs engaged in the "[d]evelopment of a new process of remediation" – all involving remediation of some form of environmental contamination. Dkt. 72-5 at 7-11. Plaintiffs responded to Defendant's Interrogatory No. 2 by stating the term "experimentation" as it relates to Plaintiffs' business components was ambiguous and that applicable IRS regulations and caselaw does not support Defendant's request as stated. Dkt. 72-5 at 11. In answer to Defendant's Interrogatory No. 3, Plaintiffs stated Plaintiffs did not then contend the "shrink-back rule" was applicable to Plaintiffs' case, and that Defendant's interrogatory requesting how the rule may apply to Plaintiffs' 12 projects was in any event premature. Dkt. 72-5 at 12. Plaintiffs answered Defendant's Interrogatories 4-5, requesting Plaintiffs' gross receipts information for the base period 1984-88 and, identification of Plaintiffs' business components and Plaintiffs' related QREs for the base period, by stating Plaintiffs had previously provided to Defendant financial statements for Plaintiffs' gross receipts during the base period, and explained how Plaintiffs calculated on a consistent basis Plaintiffs' QREs for the base period and the tax years at issue including Plaintiffs' gross receipts for each tax year at issue, and a list of projects for the base period. Plaintiffs also asserted that under § 41 a calculation of

Plaintiffs' QREs for the base period by business component is not required and that the calculation of Plaintiffs' base period QREs need only be consistent with that employed by Plaintiffs for the tax years at issue.  Dkt. 72-5 at 12-14.

Defendant objected to Plaintiffs' responses as deficient in several particulars, including Plaintiffs' failure to describe "the process of experimentation" or an actual "experiment" utilized by Plaintiffs for each project as required by § 41(d)(1) ("substantially all of the research must contain elements of experimentation") as requested by Defendant's Interrogatory No. 2, respond directly to Defendant's Interrogatory No. 3 requesting Plaintiffs particularize Plaintiffs' possible reliance on the shrink-back rule, and insisted on a complete response to Defendant's request in Interrogatories Nos. 4-5 for gross receipts information and a detailed statement of Plaintiffs' QREs for each project.  *See* Dkt. 75-6 at 2-3.  Defendant also objected that Plaintiffs' disclosure erroneously demanded refunds based on Plaintiffs' assertion of 6,100 projects rather than Plaintiffs' subsequent allegation of 159 projects as stated in the Amended Complaint (Dkt. 51) filed March 10, 2017.  *Id.* at 1.  Plaintiffs responded by disagreeing that Plaintiffs are required to elect at this time whether it intends to rely on the shrink-back rule, agreed to provide more complete gross-receipts information, but disagreed Plaintiffs are required to calculate Plaintiffs' QREs on a business component basis.  Dkt. 75-7 at 1-2.  Because of Plaintiffs' alleged failure to provide amended responses by November 8, 2017, Dkt. 72-9, as Plaintiffs had represented (*see* Dkt. 72-1 ¶ 11) Defendant moved to compel Plaintiffs' responses to Defendant's September 2017 Discovery Requests by papers filed November 8, 2017 (Dkt. 72) ("Defendant's Motion to Compel").  On November 9, 2017, Defendant also moved to strike Plaintiffs' Second Amended Complaint (Dkt. 73) ("Defendant's Motion to Strike").

Oral argument was conducted January 10, 2018 (Dkt. 81).  Preliminary determinations on Defendant's Interrogatories Nos. 2, 3, 4, and 5 were made by the court at that time, *see*, Discussion, *infra*, at 15-16; decision was reserved on the remaining issues particularly, the adequacy of Plaintiffs' disclosure under Fed.R.Civ.P. 26(a)(1)(A)(iii) ("Rule 26(a)(1)(A)(iii)") relative to Plaintiffs' Fixed-Base Percentage.

1.    <u>Plaintiffs' Initial Disclosures</u>.

In Defendant's Motion to Compel, Defendant requests Plaintiffs' Amended Complaint (Dkt. 51) be dismissed as a sanction, pursuant to Fed.R.Civ.P. 37(b)(2)(A)(iii), (v) ("Rule 37(b)(2)(A)(iii), (v)") for Plaintiffs' failure to provide timely disclosures required by Rule 26(a)(1)(A)(iii) regarding Plaintiffs' damages, *i.e.*, refund claim in this case.

Specifically, Defendant contends Plaintiffs violated Rule 26(a)(1) by failing to timely and accurately disclose to Defendant by September 30, 2017, the date established for Rule 26(a)(1) disclosures by the court's Second Amended Scheduling Order (Dkt. 70), how Plaintiffs calculated Plaintiffs' damages as alleged in the Amended Complaint.  Defendant also points to the fact that in Plaintiffs' Amended Initial Disclosures Plaintiffs erroneously included a damages calculation that failed to take into account the substantially reduced refund amount based on the significant reduction in the number of projects for Plaintiffs' 2002 and 2003 tax years at issue upon which Plaintiffs' revised refund claim is based.  Dkt. 72-2 at 3-4.  Defendant asserts Plaintiffs' attached schedule, a copy of Plaintiffs' IRS Form 6765, also failed to account for Plaintiffs' reduced claim.  *Id.* at 4.  Nor, as Defendant argues, Dkt. 72-2 at 8, do Plaintiffs' Amended Disclosures correlate to either the Complaint or Amended Complaint, demonstrating Plaintiffs' Amended Disclosures failed to comply with Rule

6

26(a)(1)(A)(iii) with respect to exactly how Plaintiffs calculate Plaintiffs' damages. Defendant therefore requests dismissal of the Amended Complaint as a sanction based on Plaintiffs' willful disregard of the actual facts underlying Plaintiffs' refund claim. Dkt. 72-2 at 10. ("[Plaintiffs] plainly . . . knew it was not the calculation of damages they were claiming."). With only three months remaining for discovery Plaintiffs' unexcused failures to timely and accurately disclose how Plaintiffs' damages were to be calculated, according to Defendant, demonstrate Plaintiffs' "egregious" discovery misconduct was intended to "obstruct [Defendant's] discovery," and such conduct therefore warrants dismissal as a sanction pursuant to Rule 37(a)(3)(A)(iii), (v), which includes "striking the pleadings" of the offending party. *Id.* at 9-10. Plaintiffs responded to Defendant's contentions by pointing to several alleged deficiencies in Defendant's disclosures. Dkt. 76 at 1-2.

At oral argument on Defendant's Motion to Compel, the court, as noted, reserved decision to allow Defendant to review Plaintiffs' Second Amended Disclosures which Plaintiffs served on November 29, 2017, after Defendant's Motion to Compel was filed. *See* Dkt. 76-2 at 1-13. Specifically, Defendant contends that instead of providing an accurate damages calculation to which Defendant is entitled, Plaintiffs' Second Amended Disclosure further compounds Plaintiffs' failure to fully comply with Rule 26(a)(1)(A)(iii) in that Plaintiffs' latest calculations do not match up with the refund claim as alleged in the Amended Complaint or the Second Amended Complaint (Dkt. 71). Part of the confusion created by Plaintiffs in this regard arises apparently from Plaintiffs' acknowledgment that whereas the Amended Complaint did not include a $204,558 tax credit carry back resulting from an earlier settlement of a Tax Court proceeding involving Plaintiffs' 2004 tax year ("the carry back"), Plaintiffs' Second Amended

7

Complaint included such a claim.  In Plaintiffs' Second Amended Disclosures Plaintiffs indicate Plaintiffs' damages include refunds of $424,352 for tax year ending September 30, 2002, and $918,824 for tax year ending September 30, 2003, plus an additional $204,558 representing the carry-back.  However, Plaintiffs' Second Amended Disclosures refers to Plaintiffs' "original" claims and includes only numbers included in Plaintiffs' Form 6765 which state refunds for Plaintiffs' 2001-2002 and 2002-2003 years of $424,352 and $918,824, respectively, neither of which correspond to the refunds alleged in either the Amended Complaint ¶ 15 ($245,077; $413,066) or the Second Amended Complaint ¶ 15 ($245,077; $413,066).  The court therefore finds Plaintiffs' Second Amended Disclosure does not sufficiently comply with Rule 26(a)(1)(A)(iii) with respect to Plaintiffs' calculation of damages.  Under Rule 37 the court shall impose sanctions that are "just."  *Linde v. Arab Bank, PLC*, 706 F3d 92, 101 (2d Cir. 2013) ("Rule 37(b) authorizes district court to impose sanctions upon a party for failing to comply with discovery order, so long as those sanctions are 'just'").  In complying with Rule 26(a)(1), a party is expected to exercise reasonable efforts including consulting available records and employees as sources upon which to prepare the required disclosures.  *See Chen-Oster v. Goldman, Sachs & Co.,* 285 F.R.D. 294, 308 (S.D.N.Y. 2012) (requested party's "obligation is to make reasonable efforts to locate and produce information responsive to the [requesting party's] legitimate discovery demands").

    In this case, Plaintiffs have engaged in an IRS audit prior on Plaintiffs' refund claim to commencing this action in 2015 thus providing Plaintiffs ample opportunity to ascertain both the actual amounts of refunds sought and the factual basis for Plaintiffs' requests.  Plaintiffs' failure to do so on a timely basis, even after reducing the number of projects upon which Plaintiffs' claim is now based, certainly has delayed the orderly

prosecution of this case and also interfered with Defendant's ability to prepare a defense within the period allotted for discovery and, given the pendency of Defendant's Motion to Compel, will require the court to further enlarge the time for discovery to be completed. Plaintiffs' opposition (Dkt. 75), while explaining the apparent discrepancies in Plaintiffs' total damage claim, ignores the fact that Plaintiffs' disclosures do not provide a reasonably comprehensible basis for ascertainment of Plaintiffs' R&D tax-credit based refunds for Plaintiffs' 2002 and 2003 tax years as alleged in the Amended and Second Amended Complaint. Other than referring to Defendant's alleged failure to complete disclosures, and explaining that Plaintiffs' inadvertence caused Plaintiffs' failure to include the $204,558 tax credit carry-back to be dropped from the Amended Complaint, Plaintiffs provide no explanation sufficient to establish Plaintiffs' inadequate disclosures regarding Plaintiffs' calculations of Plaintiffs' damages was substantially justified as required by Fed.R.Civ.P. 37(a)(5)(A) to avoid an award of moving party's expenses, even where the required disclosures are provided subsequent to the filing of a motion to compel. That Defendant's disclosures may be incomplete does not, of course, excuse Plaintiffs' failure to do so. *See* Fed.R.Civ.P. 26(a)(1)(E) (party required to provide required disclosure even where the party has challenged to the adequacy of the moving party's disclosures). Following oral argument, Plaintiffs served on January 25, 2018, Plaintiffs' Third Amended Initial Disclosures, which Defendant acknowledges appear to adequately comply with Rule 26(a)(1). Dkt. 88 at 2 ("These disclosures contain calculations of plaintiff's claimed damages that, on their own, appear to satisfy plaintiff's obligation under Rule 26(a)(1) . . .."). Accordingly, the court will not recommend striking Plaintiffs' Amended Complaint but will consider awarding Defendant its reasonable expenses incurred in connection with Defendant's Motion to Compel.

As a further ground for Defendant's requested sanctions based on Plaintiffs' inconsistent Rule 26(a)(1) disclosures with respect to Plaintiffs' damages, Defendant points to Plaintiffs' Third Amended Disclosures stating that Plaintiffs' Fixed-Based Percentage of Plaintiffs' 2002 and 2003 tax years was 1.67% versus 3.34% as Plaintiffs had stated in Plaintiffs' previous disclosures.  *See* Dkt 88 at 2.  Specifically, Defendant maintains that although Plaintiffs, in the Amended Complaint, had vastly reduced the number of projects upon which Plaintiffs' refund claim is based to 159 from 6,100, Plaintiffs now disclose Plaintiffs had also reduced Plaintiffs' QREs for the 1984-88 base period, a required element for calculation of a § 41 tax credit.  Dkt. 88 at 2.  Thus, in Plaintiffs' Third Amended Initial Disclosures Plaintiffs failed to explain that the basis for Plaintiffs' damages calculation include the asserted reduction in QREs yet continued to allege in the Amended and Second Amended Complaints that the Fixed-Base Percentage for the Base Period was 3.34%.  *Id.* (referencing Dkt. 88 at 3) (Defendant's Exh. D).  In short, Defendant argues Plaintiffs misleadingly and repeatedly asserted such percentage was 3.34% and only recently disclosed in response to Defendant's Motion to Compel, that Plaintiffs' damage calculation utilized a Fixed-Base Percentage of 1.67%. Dkt. 88 at 3.  Defendant also contends Plaintiffs' Third Amended Disclosures shows that Plaintiffs changed, *i.e.*, "recalculated," Plaintiffs' method of calculating Plaintiffs' refund claim, *i.e.*, by substantially reducing the number of projects Plaintiffs conducted in the tax years at issue producing a newly disclosed Fixed Base Percentage of 1.67%.  Dkt. 88 at 4.  Such change in methodology is, as Defendant also contends, contrary to Plaintiffs' answer to Defendant's Interrogatory No. 6 which asserted that in computing a base amount and the Fixed Base Percentage, a claimant need only apply "a basis consistent with the <u>definition</u> of QREs . . .  for the credit year," Dkt. 88 at 6

(underlining added), and not based on the same method.  Defendant therefore asserts such significant inconsistencies amount to evasive answers and, pursuant to Fed.R.Civ.P. 37(a)(4), are equivalent to a failure to accurately disclose, despite Plaintiffs' belated disclosures in Plaintiffs' Third Amended Initial Disclosures describing Plaintiffs' methodology in calculating damages, warranting as a sanction, as Defendant requests, that the Second Amended Complaint be dismissed or that Plaintiffs be precluded from establishing Plaintiffs' Fixed-Base Percentage is less than 3.34%, but without prejudice to Defendant's ability to contest such percentage, as Plaintiffs have previously represented.  Dkt. 88 at 5-6.  Such inconsistent disclosures are material and prejudicial to Defendant as any reduction in a claimant's Fixed-Base Percentage in seeking § 41 R&D tax credits and potential refunds has, according Defendant's calculation, increased Plaintiff's total damages claim by $250,000.  Dkt. 88 at 2.  Defendant does not provide any details demonstrating how Defendant's asserted $250,000 increase in Plaintiffs' damages was computed; however, Plaintiffs have not disputed Defendant's assertions.

In Plaintiffs' Memorandum In Opposition to United States [*sic*] February 7, 2018 Letter To The Court, Dkt. 94 ("Plaintiffs' Response") Plaintiffs noted that at oral argument Plaintiffs agreed to supplement Plaintiffs' disclosures to "provide additional details on the computation [of Plaintiffs' damages] and to clarify confusion with regard to a prior calculation [of Plaintiffs' damages]."  Dkt. 94 at 2.  In Plaintiffs' response to Defendant's contentions seeking sanctions based on alleged inconsistencies between Plaintiffs' answer to Defendant's Interrogatory No. 6, Plaintiffs' Third Amended Disclosure, and Plaintiffs' change in the resulting computation, reducing Plaintiffs' Fixed-Base Percentage to 1.67%, Plaintiffs maintain Plaintiffs' disclosures were

11

straightforward and satisfactorily explain Plaintiffs' method of computation, as Defendant recently acknowledged, and that supplementation to Rule 26(a)(1) disclosures is to be expected in the course of R&D tax credit litigation and, as such, does not justify severe sanctions such as dismissal. Dkt. 94 at 3-4. Plaintiffs also argue that there is no inconsistency between Plaintiffs' answer to Defendant's Interrogatory No. 6 regarding Plaintiffs' method for determination of Plaintiffs' QREs for the base period years 1984-88, as Plaintiffs were required to employ different methods based on significant variations in Plaintiffs' available records, *e.g.*, lack of retention of physical records, requiring Plaintiffs' use of estimates, supporting such calculation. Dkt. 94 at 5. Plaintiffs also contend Defendant's complaints are too insubstantial to warrant any sanctions. Dkt. 94 at 6-8 (citing *Trinity Indus., Inc. v. United States*, 757 F.3d 400 (5th Cir. 2015) (reversing district court's denial of plaintiff's request to amend the plaintiff's Base-Period Percentage post trial)), and that because when Plaintiffs' Third Amended Disclosures were served on January 25, 2018, discovery was on-going and the Third Amended Scheduling Order, filed February 26, 2018, extended the discovery period to June 28, 2018, in order to allow the parties to sort out and resolve, through additional discovery requests, including depositions, any remaining issues, including a definitive understanding of Plaintiffs' damages calculation, necessary to render the case ready for summary judgment or trial. Dkt. 94 at 8 (citing caselaw). Plaintiffs also noted Defendant's Motion to Strike Plaintiffs' Second Amended Complaint to include Plaintiffs' carry-back refund was moot because Plaintiffs agreed to withdraw Plaintiffs' Second Amended Complaint thereby removing that claim from the case. Dkt. 94 at 8-9.

In Defendant's reply ("United States' Reply To Plaintiffs' Memorandum in Opposition To United States' February 7, 2018 Letter To The Court"), filed March 19,

2018, (Dkt. 96) ("Defendant's Reply"), Defendant reasserts that in opposition to Defendant's Motion to Compel filed November 29, 2017, Plaintiffs misstated Plaintiffs' actual Fixed-Base Percentage as 3.34%, Dkt. 96 at 3 (Second Amended Initial Disclosures show "how the [Plaintiffs'] R&D credits being claimed were calculated are attached") (citing to Dkt. 76-2 at 12 referencing the CRA Bates No. 1842 ("The base amount and fixed base percentage are indicated at bates [*sic*] number CRA 1842"). Bates number CRA 1842, included in the record at Dkt. 88 at 21, does not reflect Plaintiffs' base amount or Fixed Base Percentage. However, CRA 1843 (reproduced in Defendant's Motion to Compel in Dkt. 88 at 22) states Plaintiffs' Fixed-Base Percentage for Plaintiffs' 2002 and 2003 tax years is 3.34%, not 1.67% as now stated in Plaintiffs' Third Amended Disclosure, a fact which Defendant asserts Plaintiffs should have well-understood upon filing the Amended Complaint in March 2017 including Plaintiffs' Second Amended Initial Disclosures, prior to serving on November 19, 2017 faulty responses to Defendant's discovery requests. Dkt. 96 at 3. Defendant further contends that Plaintiffs' reliance, *see* Dkt. 94 at 7-8, on *Trinity Indus., Inc. v. United States*, 757 F.3d 400, 412 (5th Cir. 2014) (allowing potential recalculation of Fixed-Base Percentage after trial to achieve consistency between base period and claim period years with respect to plaintiffs' QREs) is misplaced in that although the 5th Circuit permitted such potential recomputation, in that case there was no indication, unlike in the instant case, plaintiff had improperly represented its Base-Period or Claim-Period information. Dkt. 96 at 4. However, in *Trinity* the court held remand to potentially recalculate plaintiff's R&D tax credit based on proper application of the required consistency of calculation of plaintiff's QREs for the base period and the claim period was required, *Trinity*, 787 F.3d at 412, and, as such, the court's holding does not assist this court in resolving the

asserted inadequacy of Plaintiffs' disclosures for computation of Plaintiffs' Base Period Percentage.  Accordingly, *Trinity* does not support Defendant's request that Plaintiffs be held to Plaintiffs' Base Percentage of 3.34% as Plaintiffs initially disclosed, nor does it support Plaintiffs' opposition to Defendant's request for sanctions.  Defendant also argues the delay associated with compelling Plaintiffs to correctly disclose Plaintiffs' Base-Period Percentage has interfered with Defendant's ability to prepare its defense without incurring unnecessary expense and delay in addressing the merits of this case.  Dkt. 96 at 5.  In particular, Defendant argues that even if such failure to make timely disclosure of materials facts is the fault of Plaintiffs' counsel in order to deter similar misconduct, such a flagrant inattention to detail warrants preclusion of Plaintiffs' use of the 1.67% as Plaintiffs' recently asserted Fixed-Base Percentage.  Dkt. 96 at 6 (citing *Haas v. Delaware & Hudson Ry. Co.,* 282 Fed.Appx. 84, 86 (2d Cir. 2008) (failure to properly disclose available facts precluded subsequent use of undisclosed witness's affidavit on issue of notice of defect to avoid summary judgment)).

 Although Plaintiffs correctly point to the value of flexibility in enforcing Rule 26(a)(1) disclosure requirements in obtaining early and accurate disclosures to facilitate the smooth development of discovery in R&D tax refund cases, such flexibility cannot justify Plaintiffs' repeated failure to promptly and correctly reveal its methodology with respect to calculation of Plaintiffs' Fixed-Base Percentage, a required and significant element for correct computation of Plaintiffs' R&D tax credits and resulting § 41 refund claim.  However, it is also the case that preclusion is one of the strongest sanctions available to the court pursuant to Rule 37(b) which courts hesitate to impose, *World Wide Polymers, Inc v. Shinkong Synthetic Fibers Corp.,* 694 F.3d 155, 159 (2d Cir. 2012) (striking claims is a drastic remedy to be imposed only in extreme circumstances

after considerations of alternative sanctions) (citing cases); *see also Safespan Platform Systems, Inc. v. EZ Access, Inc.*, 2011 WL 747367, at *4 (W.D.N.Y. Dec. 30, 2011) (declining to assess sanctions for lack of prejudice where discovery issue did not arise on eve of trial or present any novel theory late in the proceedings), if other sanctions, under the circumstances can sufficiently rectify the problem. Here, discovery is not yet complete and has been recently stayed (Dkt. 112) to allow for complete judicial resolution of Defendant's Motion to Compel and Defendant's Motion to Compel proper responses to Defendant's Fourth Set of Interrogatories, filed in March 2018 (Dkt. 95) which remains pending while awaiting further briefing. A mutually acceptable schedule for depositions of Plaintiffs' Rule 30(b)(6) witness(es) and depositions of several of Plaintiffs' non-party fact witnesses, *i.e.*, Plaintiffs' employees and former employees, is also being contested by the parties, Dkt. 112, requiring an extension of discovery for the case. Thus, Defendant will have a reasonable and fair opportunity to inquire, in sufficient detail including serving additional interrogatories, if necessary, into Plaintiffs' methods for Plaintiffs' calculation of damages, including the calculation of Plaintiffs' Fixed-Base Percentage, and the facts upon which Plaintiffs' Fixed-Base Percentage is calculated. Accordingly, the court finds Defendant maybe entitled, as a sanction for Plaintiffs' insufficient Fixed-Base Percentage disclosure required by Rule 25(a)(1)(A)(iii), to Defendant's reasonable expenses incurred in prosecuting Defendant's Motion to Compel, but not dismissal of the Amended Complaint or preclusion limiting Plaintiffs' evidence to Plaintiffs' recently asserted 1.67% percentage in support of Plaintiffs' claims as Defendant requests. Plaintiffs' Third Amended Disclosures, served January 25, 2018, provided such detail served after Defendant's motion does not preclude, as

discussed, Discussion, *supra*, at 9, the award of Defendant's expenses as a sanction. See Fed.R.Civ.P. 37(a)(5)(A).

2.  <u>Defendant's Interrogatories</u>.

With respect to Defendant's Interrogatory No. 2 requesting Plaintiffs' description of "experimentation" as used in § 41(d)(1) conducted by Plaintiffs in relation to Plaintiffs' business components for each of the 12 projects, at oral argument Defendant agreed to serve an amended interrogatory. Accordingly, as to this Interrogatory, Defendant's Motion to Compel is deemed WITHDRAWN and as such is DISMISSED without prejudice.

As to Defendant's Interrogatory No. 3 requesting Plaintiffs provide a more definitive statement with regard to Plaintiffs' expected reliance on the shrink-back rule, at oral argument the court determined Plaintiffs' answer was, at the present time, sufficient. As to Plaintiffs' Interrogatory No. 3, Defendants' Motion to Compel is DENIED. Plaintiffs are, however, reminded of Plaintiffs' duty to provide supplementation to the extent required by Fed.R.Civ.P. 26(e).

As to Defendant's Interrogatory No. 4 with regard to Plaintiffs' gross receipts for the base period information, at oral argument Defendant withdrew Interrogatory No. 4. Accordingly, with respect to this Interrogatory, Defendant's Motion to Compel is deemed WITHDRAWN and, as such, is DISMISSED as moot.

As to Defendant's Interrogatory No. 5 requesting information with regard to Plaintiffs' base period QREs with respect to Plaintiffs' asserted business components for the base period 1984-88, Plaintiffs were directed to serve an amended answer within two weeks, and Defendant was to advise whether such answer was satisfactory. The record does not indicate any further dispute by Defendant with regard to this

Interrogatory. Accordingly, Defendant's Motion to Compel with respect to Defendant's Interrogatory No. 5 is deemed WITHDRAWN and, as such, DISMISSED without prejudice.

3. <u>Defendant's Request for Document Production</u>.

Regarding Defendant's Request for Production, Plaintiffs at oral argument agreed to provide supplemental responsive document production, and Defendant agreed. Defendant's motion was withdrawn as to Defendant's requested production. There is no indication in the record that Plaintiffs have failed to provide the promised supplemental production. Accordingly, as to this request, Defendant's Motion to Compel is deemed to have been WITHDRAWN and, as such, is DISMISSED without prejudice

**CONCLUSION**

Based on the foregoing, Defendant's Motion to Compel is DISMISSED in part, and DENIED in part. Plaintiffs shall show cause <u>within</u> <u>10</u> <u>days</u> of this Decision and Order why Defendant's expenses incurred in connection with Defendant's Motion to Compel should not, pursuant to Fed.R.Civ.P. 37(a)(5)(A), be granted; Defendant's response shall be filed <u>within</u> <u>10</u> <u>days</u> thereafter; Plaintiffs' reply, if any, may be filed <u>within</u> <u>five</u> <u>days</u> after Defendant's response. Oral argument shall be at the court's discretion.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: July 12, 2018
       Buffalo, New York

**APPENDIX**

The QRE R&D tax credit allows a company to claim as a tax credit a percentage of their expenses for research and development incurred in a particular year. To calculate a taxpayer's R&D tax credit, the following information is needed:

(1) The Base Period is defined as the taxable years beginning after December 31, 1983 and before January 1, 1989;[3]

(2) The Claim Year QREs defined as the qualified research expenses (as defined under 26 U.S.C. § 41), incurred in the year for which the tax credit is sought;

(3) Aggregate Base Period QREs, *i.e.*, the sum of all QREs for the Base Period;

(4) Aggregate Base Period Gross Receipts, *i.e.*, the sum of a taxpayer's gross receipts for the Base Period;

and

(5) Average Annual Gross Receipts for the four years immediately preceding the year for which the R&D credit is sought.

This information is entered into two different formulas and the lower result is the taxpayer's R&D tax credit.

The first method is calculated as 20 % of the difference between the QREs claimed for the particular tax year and a "Base Amount," which is calculated as the "Fixed Base Percentage" multiplied by the taxpayer's Average Annual Gross Receipts for the four year period immediately preceding the claim year, 26 U.S.C. § 41(a), but in

---

[3] Congress has never explained its selection of these five years to serve as the statutory based period, but the selection appears to have been "chosen because they were the five-year period immediately preceding the 1989 amendments." Legal Guide to the Research Credit § 7:3 (Westlaw 2018). Although not applicable here, the court notes the fixed-base percentage is computed according to a different formula for newer or "start-up" companies that did not have both QREs and gross receipts for the requisite years. *See* 26 U.S.C. § 41(c)(3)(B).

no event may the Fixed Base Percentage exceed 16 %. 26 U.S.C. § 41(c)(3)(C). The Fixed Base Percentage is calculated by dividing the aggregated QREs for the immediately preceding four year period by the aggregate gross receipts for the same period. The resulting mathematical formula is:

$$20\% \times \left[ \text{Claim Year QREs} - \left[ \frac{\text{Aggregate Base Period QREs}}{\text{Aggregate Base Period Gross Receipts}} \times \text{Aggregate Annual Gross Receipts for 4 Years Preceding Claim Year} \right] \right]$$

See *Trinity Industries, Inc. v. United States of America*, 757 F.3d 400, 407 (5th Cir. 2014).

This first formula thus takes into account the taxpayer's historical research expenses for the four years immediately preceding the claim year, with the R&D tax credit available only when the QREs for the claim year exceed the average QREs for the preceding four years. When calculating the R&D tax credit according to this first formula, an increase in the Aggregate Base Period QREs will result in an increased Fixed Base Percentage, which ultimately will yield a lower R&D tax credit for a given year.

The second method is simpler:

$$20\% \times (50\% \times \text{Claim Year QREs}).^4$$

26 U.S.C. § 41(c); *Trinity Industries, Inc.*, 757 F.3d at 3.

The lower resulting number is the amount of the taxpayer's R&D tax credit for the claimed year.[5]

---

[4] The second method can be even more simply expressed as 10% of the claimed QREs.
[5] Because the maximum allowed R&D tax credit is the lower of the two, the maximum amount of the R&D tax credit for any given year is 10% of the claimed QREs.